Last case this morning, United States v. Pierson. Good morning, my name is Zach Julow, I'm court appointed counsel for the defendant appellant Devan Pierson. The issue on appeal is whether the court should vacate Pierson's firearm convictions in light of U.S. v. Leitchner. In both cases, the defendant was indicted for possessing a specific firearm. In both cases, the governor introduced substantial evidence of a different firearm, and in both cases, the district court instructed the jury to convict, but found the defendant possessed a firearm, in effect, either one of them. In Leitchner, this court concluded that this sequence of events constituted constructive amendment, which occurs when the evidence presented at trial, together with the jury instructions, alters the indictment to charge an offense different from the one the grand jury charged. The court threw out Leitchner's firearm conviction, it should do the same here too. The government attempts to distinguish Leitchner in a number of ways, but as our reply brief shows, each fact that the government invokes to distinguish the case was considered and rejected by the Leitchner court itself. Leitchner is the law in this circuit, and it should be considered. Wasn't there a difference, though, in terms of the way the government argued the cases? Whether the plain error standard of review was invoked? Yes, Judge Hamilton, that is correct. That is the one distinction between this and Leitchner. So here, because this review is subject to this plain error review, Pierson must show prejudice. He must show that the error that occurred at trial affected his substantial rights. As noted, the government introduced evidence of two guns. There was a gun found in the car, which was charged in the indictment, and then there was a gun found in the kitchen, which was not charged. Pierson suffered prejudice because he might have been convicted for possessing the uncharged kitchen gun. So there is a theoretical possibility of that. Given, however, the government's closing arguments, correctly focusing people, the jury, on the gun in the car, and the language in, I've forgotten whether it was the jury or the indictment, why is there actually a realistic danger here, do you think? Well, there's a couple of reasons for that. First, each of those points was actually considered in Leitchner. Right, but Leitchner did not do plain error review, and, in fact, signaled that it might well have come out the other way under plain error review. Correct. So, giving the indictment to the jury, you're asking why that might have prejudiced him, or why there was prejudice in light of that? The combination of making sure the jury had the indictment was asked to decide, is he guilty of the charge in the indictment, and the government's closing argument did not seek to take unfair advantage of this potential confusion, but instead focused the jury correctly on the gun that was found in the car. Okay. So, basically, the terms of the indictment, and, frankly, what the government said in closing is largely irrelevant. At the district court... In terms of evaluating prejudice? Correct. Really? Let me explain why. The district court told the jury, as we know, for a jury, the word of the district court is as if it's from the word of God. It is what they have to follow, no matter what. The court told the jury that, you have to follow my instructions, no matter what, even if you disagree with it. The court then proceeded to mischaracterize what the indictment said. The court said that the indictment charged Pearson with possessing a firearm. So even though the court gave the indictment to the jury, that doesn't extinguish what the court told the jury the indictment said. So that in itself, the court telling the jury, you've got to listen to my instructions, no matter what, extinguishes all of that other stuff. In addition, if we remember in Leichnam, the court there properly instructed the jury as to the terms of the indictment. The court read the indictment, said that the charges in this indictment were the Mossberg rifle, and then only when he was summarizing the elements of the offense, 924C, only there, when he was summarizing those, did he make his a firearm instruction. So in many ways, this case is actually worse. Here, the district court mischaracterized the indictment. In Leichnam, the court didn't. Also, you're talking about the government's, what they said in closing. Yes, they did say in closing that we're talking about the gun found in the car. In the same breath, the government told the jury that this is the same type, same model, very similar to the gun found in the kitchen, which Pearson wasn't very surprised to see. Now, I think it's pretty clear what the government was doing here. The government had, they charged these firearm counts. They had two imperfect candidates. They had one gun in the kitchen, which had a very close connection to drug trafficking, but it had someone else's fingerprint on it. Then, they had another gun found in the car, which had some evidence of drug trafficking, but much, much weaker, tenuous evidence of drug trafficking, but it was clean. What the government did was they charged the clean gun, and then they introduced the kitchen gun to get in all of the evidence of drug trafficking, while maintaining that the car gun is really an issue. When you have that coupled with the district court's instruction to convict if the jury found that he possessed a firearm, we do not know which gun the jury convicted him of possessing. United States v. Sterone says it violates your substantial rights to be convicted of a crime that you were never charged with, and that's exactly what happened here. That's the prejudice that they suffered. Also, I think one other difference between Leichten and this, these guns were very, very similar, I mean, in appearance. You have, on page nine of my reply brief, they look identical, except for the make and model etched into the side, they're basically the same gun. Now, in Leichten, you have a rifle, and then you have two handguns. I mean, those are pretty different. I think in all respects, the likelihood of jury confusion here was much higher than it could have been in Leichten. I think the government is going to argue in its response that the proper standard is really not that, looking at a reasonable probability of whether he was convicted of the uncharged crime. The government might argue the REMSA standard, which is whether he could have been convicted of the charged crime, but for the constructive amendment. And I don't think that's really getting at what the harm is. I mean, we're focusing, what Sterone says is to focus on the charge in the indictment. That's the entire issue. The 9th, 10th, and 11th circuits, when they assess prejudice, do so through that lens. They say, OK, he was prejudiced because he may well have been convicted for the uncharged crime. By applying what REMSA does, and by looking at whether the error constituted a mistake so serious that, but for it, the defendant probably would have been acquitted, it shifts the focus from the actual constitutional error described in Sterone. And instead it focuses on the evidence supporting the charged crime, which is treating it as like a garden variety evidentiary violation. And that standard is not correct. I think even under that standard, Pearson still should win. I think that there is a reasonable probability that he would have been acquitted for that uncharged crime. As I said, the evidence was connecting that car gun to drug trafficking was weak. You have a disheveled looking man who gets in their car for a minute. You have some text messages saying that Pearson traveled in some car at some point. He brought a bag inside from the car? Correct. Drugs were found in the bag. Correct. And those were left with his sneakers, right? Correct. That seems like a pretty decent connection to drug trafficking. It is a connection. But at the same time, if you remember Judge Hamilton, the court instructed the jury the mere presence of the firearm at the crime scene is not enough. And I want to make this very clear. We are not looking at whether the evidence was sufficient. If we were to prove insufficient evidence, the government's done. I mean, this case is over. It has to be a different standard. And I think if you look at the court's instruction and you look at the evidence, I think there's a reasonable probability that he could have been acquitted. Now I have very, very little time left. I want to save some time for rebuttal. I want to say that we did file a motion to submit a supplemental brief to determine the applicability of the First Step Act, Devin Pearson. We think it applies here and that he should be re-sentenced. We would like an opportunity to brief that. Also we raised the Aleene Challenge. We understand it's foreclosed by this court's precedent, but we raised it reserved for the county. Mr. Linder. Thank you, Your Honor. Good morning and may it please the Court. Nick Linder on behalf of the United States Attorney's Office for the Southern District of Indiana. The Leitchem case said that even that case would have been easy under a plain air standard. And this is that easy case. The threshold question is, was there a reasonable likelihood that the jury was confused here? And that's analyzed on a case-by-case analysis, which is why our brief is full of record sites. And the answer in this case is no, the jury's not confused. And indeed that's... Well, you were pretty clear about which gun you were concerned about, but the judge wasn't, was he? I think the judge was, Your Honor. The judge used the pattern instructions from the Southern District. All right. The plan said firearm, not... Which is what the patterns say. Now... It doesn't call for an identification of the gun in the pattern instructions? The charged gun? I don't believe so, Your Honor. The pattern instructions do... All of them, all the elements instructions do refer to the indictment. And that's how these instructions usually play out. As charged in count X, the government must prove these elements. And the jury gets a copy of the indictment. They can read count X and see what is the firearm. But the... I haven't looked at the pattern instructions. They don't call for the court to actually identify which gun? They do not. The pattern instructions state for 922G, 924C. And frankly, I mean, this argument would apply to a whole host of types of possessory sorts of issues, child pornography. No, it does not. The patterns say, as charged in the indictment, the elements are. And a copy of the indictment goes back to the jury. And the jury is able to see what is the firearm, the precise firearm that we're talking about. Well, but given... Clearly, the government focused on the correct... Correctly on the weapon in the car. But the judge, as your opposing counsel pointed out, stressed the fact that only a firearm, not indicating which one. The judge did say a firearm. The judge read the pattern. No question about that. The jury instructions that the judge used were the patterns. The question, however, is, is there a reasonable likelihood that the jury was confused? And in particular, the standard that Mr. Cuchilla said, the REMSA standard, is the standard on plain error. So not only does there need to be a reasonable likelihood, but that he would have been acquitted. And that is not the case here. Or the reasons you've pointed out, which is that the government's case did focus on the gun in the car. So what was the point of putting on evidence about the Brazilian origins of the gun in the kitchen? The gun in the... Let me answer first by explaining why the gun in the kitchen was discussed. And then I'll mention... Actually, let me just cut to it. If you look at special agent, the ATF agent's testimony, it was very short, five pages. It was formulaic. He went through, what did you do? He's used to establishing the commerce connection. Precisely. But there's absolutely no point and risk of doing that in this case, right? I have to agree. No, that's certainly not relevant. The agent said, I looked at two guns. And the testimony was, well, what did you do with those two guns? Because there were two guns in evidence. And the reason that there were two guns in evidence is twofold. One is, it was found among this prep area, and there was a number of tools of the drug trade there, and there was testimony elicited about them. Pretty detailed testimony about each of those tools. Scales, counterweights, baggies, masks. The gun was one of those tools. So it's part of the government's case in chief, particularly intent to distribute drugs. It was also brought up because it was clear that the defense in the case was, what's the government not telling you? What is the government hiding from you? In fact, in closing argument, the defense lawyer said that repeatedly. Page 456, did the government close all the doors? Page 460, what did the government not tell you? What has not been discussed? So knowing that is where they would go. And we do have a gun without a fingerprint. In fact, a fingerprint of not the defendant. That was a focal point. And so it was brought up to explain the government's investigation, to not allow the defense for the very first time on cross to say, well, why didn't you do that for this gun? Why didn't you look at that for this gun? When, in fact, the agent had. So if you look at the agent's testimony, it is, again, very formulaic. It is five pages or less. The standard questions you'd ask about any firearm. And along those lines. Any charged firearms. About the charged firearm and the other firearm. Can I ask you, Mr. Linder, as I understand it, there was no objection to the relevant jury instructions here. Did you try this case? Yes.  Was there more extensive discussion of the jury instructions with trial counsel for the defense? Or was it pretty much just we're given the patterns and that's it? We had an instructions conference with the judge, which I think is on the record. And that was the discussion about, and to the extent that the parties themselves discussed it, it was more we traded the patterns. Did the defense raise any objections, as you recall, to other instructions? That have not been argued on appeal? I can't recall. There were some discussions. Just I'm thinking back to the instructions conference. There were some discussions about whether certain things were needed. But I think in the end, everyone agreed. There was not a situation where the defense made an objection and the judge overruled it. I do want to, again, I think this case is different from Lightning. The plein air standard is the clear difference. I think carries the day. The arguments of counsel, I think, are different. The fact that the jury got the instructions, as opposed to just having them read to them, I think is relevant. And the verdict form. The verdict form is not similar at all to Lightning. The verdict form says as the jury is signing, stating guilty, it says as charged in count X. It does not say anything about a firearm or anything along those lines. The verdict form says charged in count X. The jury has the indictment, and they can look at it. Finally, with regard to the First Step Act, the government doesn't have an objection for Pearson writing a brief on the point, but I think it's clear the First Step Act does not apply to Mr. Pearson. The First Step Act applies if your sentencing is still pending, and that's not true here. Mr. Pearson has been sentenced. You don't object to him filing a brief? Of course not. If there are any other questions, I'll have a seat. All right. Thank you. Thank you, Counselor. Just a couple brief points on rebuttal, and Judge Hamilton, thank you for raising the point about the gun coming from Brazil. There's another one, too, on that same line. Why did the government try to prove that the gun was stolen, other than to mitigate the exculpatory fingerprint evidence? The prejudice is that once we're into the closing arguments, Pearson's trial counsel now has to contend with the kitchen gun. It now has to make arguments that the kitchen gun has someone else's fingerprint on it, and the jury is now confused as to which one is really going on here. I've got to say, the prosecution makes a decent point about basically saying we want to blunt arguments to the effect that we are holding back evidence from the jury, which, at least in my experience in the trial court, was a very, very common tactic in cases in which there really isn't much of a defense on the merits. Of course. I mean, it doesn't change the effect that what could have happened to the jury. It doesn't change the effect. It might not have been by design of the government to confuse the jury, but it doesn't change the effect that the jury very well could have been confused. The verdict form, I mean, if you take a look at the verdict form in Leichtenam, it says he was convicted of a firearm, not firearms, the two uncharged guns. The verdict form here, as I said, referring back to the indictment, the indictment was already polluted based on the court's mischaracterization of it. With that, I would like to thank the court for its time. Thank you, Mr. Kuehl. Thanks to Mr. Kuehl for your participation and his pro bono and to Kirk Linnells for welcoming you and Mr. Ross, too. Thank you all. We'll grant the motion for leave to file a brief. You have 14 days to file simultaneous briefs. Okay? The court will be in recess.